2004 SD 13

**Rex HINES, Petitioner and Appellant,**

v.

**BOARD OF ADJUSTMENT OF the CITY OF MILLER, (the Common Council acting thereas), Respondent and Appellee.**

No. 22730.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Jan. 28, 2004.

Eric D. Slaathaug, Pierre, South Dakota, Attorney for petitioner and appellant.

Gregory G. Rediger, Miller, South Dakota, Attorney for respondent and appellee.

KONENKAMP, Justice.

[¶ 1.] Rex Hines requested a variance for one of his lots from a city ordinance restricting the placement of mobile homes. Following a hearing, the Board of Adjustment for the City of Miller denied the request. Hines filed a Petition for a Writ of Certiorari with the circuit court under SDCL 11–4–26. The circuit court ruled that the board was within its authority and jurisdiction when it denied the variance. Because the record of the hearing before the board clearly indicates that the board merely acceded to neighbor objections and failed to follow the city ordinance in considering the variance request, we reverse.

### Background

[¶ 2.] Rex Hines owns four lots on the southwest outskirts of Miller. On the property to the north lies a solitary outbuilding, to the south, an overgrown lot with abandoned cars, and to the east, a sheep pasture. Two houses sit on adjoining lots to the west, one owned by Elma Thorson and the other by Don Joy. Other houses are located in the vicinity, one directly north of the Joy house and another directly south of the Thorson house.

[¶ 3.] Elaine Lingscheit, Rex's mother, deeded the lots to Rex in May 2001. The lots were once part of a larger property that originally included the lots along with the house and lots owned by Thorson. The Hines family owned this house and lots until the late 1960s or early 1970s. The family then divided the property, selling the front lots to Thorson. In the transfer, Lingscheit reserved easements for utilities and access across the Thorson property.

[¶ 4.] One or more mobile homes occupied the lots during the 1970s. Testimony suggested that the homes were most likely gone by 1982 when the City of Miller's new zoning ordinance came into effect. However, evidence showed that two mobile homes occupied the lots as late as 1976. In any event, the mobile homes were no longer located on the lots by 1984. In 1997, Lingscheit went to the city's zoning board to request a variance to place a mobile home on the lot. After a hearing, the board denied the request.

[¶ 5.] On July 2, 2001, Brian Hines and Attorney Michelle Hines requested a building permit to have a mobile home moved onto the lot. After some initial confusion on how to proceed, the board determined that a variance would be required. Eventually, a hearing on the variance was scheduled for August 6, 2001.

[¶ 6.] The board arranged the hearing so that the opponents of the request would testify first, followed by the proponents. Local residents with property adjoining or near the Hines property had put together a list of reasons why the variance should not be granted. The list was presented to the board during the hearing by Don Joy, the neighbors' spokesperson. After Joy's presentation, several board members questioned Joy about the significance of the list

of concerns. Joy admitted to the board that while the list contained concerns such as sewer hookups and snow removal, the neighbors would have no such concerns with sewer hookups and snow removal if a house were placed on the lot instead of a mobile home.

[¶ 7.] Following Joy, attorney Michelle Hines spoke. First, she noted that because the neighbors would not have the same concerns if the issue were whether a house would be placed on the lot, the neighbors concerns were not legitimate. Second, she fully explained the analysis required of the board by city ordinance and state statute. Third, she attempted to show how the request met the required variance test. However, the board continually reverted to the opinions of the neighbors that they did not want a mobile home in the lot. In response to these inquiries, Michelle Hines responded that lacking any legitimate concerns from the neighbors and lacking any response from other residents of the city, the board should find that placing a mobile home on the lot would not be against the public interest.

[¶ 8.] The board unanimously denied the variance. The transcript of the hearing reveals unequivocally that the board members decided to deny the request solely because the neighbors did not want a mobile home on the lot. As various board members commented: "[T]he real issue is: do the residence [sic] of that area desire a trailer not to be there?" "There are other areas within the community that trailers will be allowed only with a variance. In other words, with the approval of the people in that area. . . ." "And I think that, that is why most of this information needs to be not even taken into consideration, about the water, sewer and that sort of

thing." When the board unanimously voted to deny the variance request, the following colloquy occurred:

Michelle Hines: Excuse me, may I ask what the rational is for tonight for denial of the variance?

Tom McGough: If I understood the question that was addressed to the opponents of the variance, it was the placement of a mobile home on those lots.

Brian Hines: So it's because of the neighbors then?

Tom McGough: It is because of their wishes of a mobile home not being placed on those lots.

Thus, the board reasoned that because the neighbors opposed a mobile home on the lot, the request was contrary to the public interest.

[¶ 9.] Hines sought a Writ of Certiorari with the circuit court under SDCL 11–4–26. The circuit court concluded that the board of adjustment did not err in denying the variance. On appeal, Hines asserts the following issues: (1) "Miller's board of adjustment exceeded its jurisdiction when it replaced the statutory variance test with its own variance test." (2) "Does § 17.28.020(F) grant relief in the form of a special exception, variance, or hybrid." (3) "Miller's board was grossly negligent in how it managed the Hines request." Because we conclude that the board exceeded its authority in not fulfilling its obligation under the city ordinance in considering the variance request, we reverse and remand on Issue 1 and decline to reach Issues 2 and 3.*

## Analysis and Decision

[¶ 10.] We interpret zoning ordinances in accord with the rules of statutory construction supplemented by any

---

* While this appeal was pending, the city amended its ordinance to prohibit altogether any mobile homes in the area in question.

Appellants sought a stay from this Court, but the matter is not properly before us and thus it must be dealt with on remand.

rules of construction within the ordinances themselves. *Cole v. Bd. of Adjustment of City of Huron,* 1999 SD 54, ¶ 4, 592 N.W.2d 175, 176 (citing *Cordell v. Codington County,* 526 N.W.2d 115, 117 (S.D. 1994)). Our consideration of a matter presented on certiorari is limited to whether the board of adjustment had jurisdiction over the matter and whether it pursued in a regular manner the authority conferred upon it. *Id.* (quoting *Peters v. Spearfish ETJ Planning Comm'n,* 1997 SD 105, ¶¶ 5–6, 567 N.W.2d 880, 883). A board's actions will be sustained unless it " 'did some act forbidden by law or neglected to do some act required by law.' " *Id.* " '[C]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding. . . .' " *Id.* ¶ 11 (citing *Willard v. Civil Serv. Bd. of Sioux Falls,* 75 S.D. 297, 298, 63 N.W.2d 801, 801 (1954).

[¶ 11.] Hines contends that the board exceeded its authority by substituting the variance test prescribed in the city ordinance with a test that consisted of nothing more than allowing the opinions of neighbors to control whether a variance would be permitted. MCO § 17.16.040(C) provides that the board of adjustment shall have the power:

> To authorize upon appeal in specific cases such variance from terms of this title as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this title will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

[¶ 12.] SDCL 11–2–53(2) presents similar requirements for the issuance of a variance. It states that a board of adjustment may:

> Authorize upon appeal in specific cases such variance from terms of the ordi-

nance as will not be contrary to the public interest, if, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance is observed and substantial justice done[.]

Both the ordinance and the statute require first that a grant of a variance must not be "contrary to the public interest." Second, an applicant for a variance must show that "special conditions" exist under which "a literal enforcement" of the ordinance would cause "unnecessary hardship," which would not impair the spirit of the ordinance and substantial justice. Importantly, for a board to grant a variance, both the public interest prong and the special conditions prong must be met.

[¶ 13.] There is no question that the Board of Adjustment was bound to follow this test. Logically then, its failure to follow the test mandates the conclusion that the board exceeded the scope of authority granted to it by MCO § 17.16.040(C). The Board's failure to follow the prescribed test was manifested in its apparent lack of comprehension of the obligation to decide what was "contrary to the public interest." In denying the variance, the Board simply relinquished its decision to a vote of the neighbors.

[¶ 14.] The Board argues that its decision was "[a]s a result" of a list of concerns presented by the neighbors. This is not reflected in the transcript of the August 6, 2001 hearing. It is true that initially the neighbors presented a list of concerns to the board. However, the board quickly disregarded the list of concerns as irrelevant. Don Joy, the neighbors' spokesperson, stated, "I don't want a mobile home, I don't object to a house back there." As to the list of concerns presented by the neighbors, board member Dick Palmer stated, "And I think that, that is why most

of this information needs to be not even taken into consideration, about the water, sewer and that sort of thing." Board member Tom McGough clearly expressed his basis for denying the request when he stated:

And going on and the time that I have, and I am going to say the privilege and opportunity to sit on as a council member and presently as the Mayor, we have taken notice again, we sent out notices to the people in that area and we have taken into consideration their concerns with regard to a mobile home coming into that area. And based on their approval or disapproval has been the common ground on which this council has taken action on that. Having said that, that's basically where we are right now with regard to that.

Attorney Michelle Hines responded:

And my comment to that would be, I'm not saying that you do not have to take into consideration the comments from the neighbors, you do and I think you should. You would not be acting as an appropriate council if you didn't, but I also think that because there's objection, does not mean that a variance should be denied. That's what this commission is supposed to look at. This commission is supposed to look at its ordinances, the commission is supposed to look at what the law says 11-4-17 subpart 3, which gives you the factors you should look at and decide whether or not the variance should be allowed. Not because there is objection, because 9 times out of 10, somebody's going to object to whatever you're going to do in an area.

Despite Attorney Hines's attempts to explain the legal implications of the ordinance and statute, when asked to give the board's rationale for denial of the request, McGough responded, "It is because of [the neighbors'] wishes of a mobile home not being placed on those lots." Having dismissed the list of concerns, the board was left with only the opinion of a few neighbors whose stated reason for opposing the request was "I don't want a mobile home [on Hines's lot]. . . ."

[¶ 15.] We have condemned this type of arbitrary decision-making in the past. In *Cary v. City of Rapid City*, 1997 SD 18, 559 N.W.2d 891, we struck down a statute that rested "the ultimate determination of the public's best interest" with a group of neighbors. *Id.* ¶ 23. There we reasoned, "The ultimate determination of the public's best interest is for the legislative body, not a minority of neighboring property owners." *Id.* Because the Constitution protects a landowner's right to use land for any legitimate purpose, we are wary of decisions that are based on "whims of neighboring landowners." *Id.* ¶ 22. This is so because their decisions may be lacking "any standards or guidelines," leading to decisions that may be arbitrary or capricious. *Id.* Worse, their opinions may be wholly self-serving.

[¶ 16.] Understanding the need for standards and guidelines in the variance procedure, our Legislature requires that boards of adjustment determine whether requests are contrary to the public interest. *See* SDCL 11-2-53(2). The discretion of a board to decide such matters however is not limitless. To base a decision solely on the opinion of neighbors was arbitrary and beyond its jurisdiction. The Board argues that

The neighbors did not make the decision nor did the board delegate the power and authority to make that decision to the neighbors. The board made its decision based on the board's concerns and the legitimate concerns of the neighbors which could adversely affect the City of Miller if the board were to approve Hines' variance request and thereby, re-

pudiate the legitimate concerns of the neighbors.

We find no showing in the record of any independent thought on the part of the board. Because the board did not fulfill its duty to follow the guidelines of the city ordinance and make a public interest determination on behalf of the entire city, this case must be remanded to the board for a proper determination. We need not reach the remaining questions.

[¶ 17.]   Reversed and remanded.

[¶ 18.]   ZINTER and MEIERHENRY, Justices, concur.

[¶ 19.]   GILBERTSON, Chief Justice and SABERS, Justice, dissent.

SABERS, Justice (dissenting).

[¶ 20.]   SDCL 11–4–17 provides in part:

The board of adjustment may:

(2) Authorize upon appeal in specific cases such variance from terms of the ordinance not contrary to the public interest, if, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance is observed and substantial justice done.

[¶ 21.]   These powers are permissive, not mandatory. In other words, the board of adjustment may, in its discretion, but is not required to:

1. authorize upon appeal in specific cases such variance from terms of the ordinance not contrary to the public interest,

2. if, owing to special conditions, literal enforcement of the provisions of the ordinance will result in unnecessary hardship,

3. so that the spirit of the ordinance is observed and substantial justice is done.

[¶ 22.]   Hines failed to establish any of these three criteria and he was required to establish all three to be successful.

[¶ 23.]   First, Hines was requesting a variance to move *a mobile home from a legally designated* trailer park in the City of Miller to an area in Miller which requires a variance. It is easy to see that this *was* contrary to the public interest. Hines did not show otherwise.

[¶ 24.]   Second, Hines made no showing whatsoever that denial of a variance in this instance would result in *unnecessary hardship to anyone.*

[¶ 25.]   Third, Hines made no showing that the spirit of the ordinance was not observed or that a substantial *injustice* was done.

[¶ 26.]   Hines was requesting a *variance* from an ordinance approved by the City, therefore, he had the responsibility of establishing that the Board should override the ordinance by variance. He failed to do so and that failure does not properly lead to a finding that the Board exceeded its authority. Furthermore, the Board found that allowing a variance in this case would not be in the public interest. As the majority opinion correctly notes, "certiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding[.]" Majority opinion, ¶ 10 (quoting *Willard,* 75 S.D. at 298, 63 N.W.2d at 801). It is not for this Court to second-guess the findings of the Board on certiorari. It was within the authority of the Board to deny the variance if:

1) allowing it would not be in the public interest;

2) there were no special conditions such that disallowing it would result in unnecessary hardship; and

3) if the spirit of the ordinance is observed and substantial justice is done.

The Board did not exceed that authority. Under our standard of review on a writ of certiorari, our inquiry should have ended there.

[¶ 27.] For all of these reasons, we should affirm the circuit court's determination.

[¶ 28.] GILBERTSON, Chief Justice, joins this dissent.