#29531-r-SPM
**2022 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| KAREN DUNHAM, | Petitioner and Appellant, |
| v. | |
| LAKE COUNTY COMMISSION,<br>LAKE COUNTY COMMISSION SITTING<br>AS THE LAKE COUNTY BOARD OF<br>ADJUSTMENT, | Respondent and Appellee, |
| and | |
| HODNE HOMES, LLC, | Respondent. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KENT SHELTON
Judge

* * * *

| | |
|---|---|
| JIMMY NASSER of<br>Nasser Law Firm, P.C.<br>Sioux Falls, South Dakota | Attorney for petitioner and<br>appellant. |
| ZACHARY PETERSON<br>JACK H. HIEB<br>DOMINIC F. KING of<br>Richardson, Wyly, Wise<br>   Sauck & Hieb, LLP<br>Aberdeen, South Dakota | Attorneys for respondent and<br>appellee. |

* * * *

ARGUED
NOVEMBER 8, 2021
OPINION FILED **06/01/22**

MYREN, Justice

[¶1.]    Karen Dunham petitioned the circuit court for a writ of certiorari challenging the Lake County Board of Adjustment's (Board) decision to grant a variance to Hodne Homes, LLC (Hodne Homes) to build a facility to store and display boats. On remand from this Court, the circuit court addressed a newly-raised issue about Dunham's standing and dismissed Dunham's petition. Dunham appeals. We reverse and remand.

## Facts and Procedural History

[¶2.]    This matter is the second appeal in a case previously addressed by this Court in *Dunham v. Lake County Commission* (*Dunham I*), 2020 S.D. 23, 943 N.W.2d 330. The facts underlying this case have not changed. Dunham has owned Lot 2 in Dunham's and Hemmer's First Addition (Lot 2) since 2002. In March 2018, Hodne Homes purchased Lot 1 of Dunham's and Hemmer's First Addition (Lot 1) adjacent to Dunham's lot. Sodak Marina LLC (Sodak Marina) owns the lot south of Lot 1 and operates a business selling boats on that lot. Branden and Jamie Hodne own Sodak Marina and Hodne Homes.

[¶3.]    Lots 1 and 2 are in the Lake Park 3 zoning district (LP-3) of the Lake County Zoning Ordinance (the zoning ordinance). Section 1105 of the zoning ordinance states that LP-3 was "established to provide for oversized private and commercial storage facilities." The LP-3 zoning allows "private and commercial storage facilities containing no more than four thousand (4000) square feet and [which] do not have side walls with a height greater than fourteen (14) feet." The

zoning ordinance also imposes a minimum setback requirement of two feet on the side yards and ten feet in the rear yard for properties within LP-3.

[¶4.]    After Hodne Homes purchased Lot 1, it applied for a variance and a conditional use permit (CUP) from the Lake County Commission sitting as the Board of Adjustment. Hodne Homes sought approval to construct a building to display and store boats for Sodak Marina. They proposed the construction of a 5,760-square-foot building with sixteen-foot sidewalls. Both of those specifications exceeded the limits for structures within the LP-3 zone. As finally submitted, the proposed structure would also violate the two-foot side yard setback on one side by one foot and the ten-foot rear yard setback by five feet. The setback requirement between the proposed building and Dunham's side of Lot 1 complied with the zoning ordinance. The variance request sought to relax the two-foot side yard and ten-foot rear yard restrictions on Lot 1. The CUP application requested permission to exceed the sidewall height and square footage limitations. The Board conducted a public hearing on April 17, 2018. Dunham opposed both the variance and the CUP. The Board approved the variance and the CUP.

[¶5.]    On May 11, 2018, Dunham filed a petition for writ of certiorari with the circuit court, challenging the Board's approval of the variance and the CUP. The Board filed a return to the petition for writ of certiorari on July 17, 2018. The circuit court denied Dunham's petition for writ of certiorari, determining the Board had jurisdiction to grant or deny the variance and CUP and that both the CUP and variance were granted in compliance with the zoning ordinance and statutory regulations. Dunham appealed to this Court.

[¶6.]    In *Dunham I*, this Court affirmed the circuit court's denial of Dunham's challenge to the CUP but reversed and remanded the circuit court's denial of Dunham's challenge to the variance because the Board failed to consider the special conditions prong of the two-part test required by SDCL 11-2-53(2). *Id.* ¶¶ 18–21, 30, 943 N.W.2d at 335–36, 338. Specifically, this Court stated that the Board failed to make adequate findings that an "extraordinary and exceptional" situation on the property existed and failed to consider whether a denial of the variance would create "peculiar and exceptional practical difficulties" or "exceptional and undue hardship" on Hodne Homes. *Id.* ¶ 20, 943 N.W.2d at 336. Additionally, we indicated that upon remand, "the Board must determine whether the variance will allow a use that is not permissible within LP-3." *Id.* ¶ 23, 943 N.W.2d at 336. We remanded "the variance application to the Board for further proceedings consistent with this opinion." *Id.* ¶ 38, 943 N.W.2d at 339. However, we recognized that the Board had "specifically conditioned the approval of the CUP 'upon compliance with all applicable provisions'" of the zoning ordinances, and we noted that we were not expressing an opinion as to "whether our reversal and remand of the variance decision impacts the [CUP] approved by the Board." *Id.* ¶ 30 n.9, 943 N.W.2d at 338 n.9.

[¶7.]    Once the case returned to the circuit court, that court promptly remanded the matter to the Board for further proceedings consistent with this Court's decision. On July 21, 2020, the Board held a hearing regarding the circuit court's order remanding for further proceedings. At this hearing, Hodne Homes argued that Lot 1 was a unique property in Lake County because it was the only

situation where there was a commercial property adjacent to an LP-3 zone. Hodne Homes asserted that Sodak Marina was obligated to build a display and storage building to secure the opportunity to sell boats from Crestliner and Manitou. They further stated that the setback, height, and size restrictions for buildings in the LP-3 zone could not accommodate a necessary track to move boats in and out of the display and storage building. Hodne Homes noted that if the variance were not granted, Sodak Marina would not be able to continue to sell boats for Crestliner and Manitou, which would cause them exceptional and undue hardship. Hodne Homes argued that using the building as a storage and display facility for boats was permitted under Section 505(3) of the zoning ordinance.

[¶8.] Dunham asserted that it was improper for the Board to consider the nature of Sodak Marina's business in granting the variance. She contended that the Board was confined to analyzing the particular features of Lot 1 at the time the zoning ordinance was enacted. She noted that when Hodne Homes purchased Lot 1, it contained a building that conformed to the zoning ordinance. Dunham argued that the Board had not been provided with Sodak Marina's dealership contracts with boat manufacturers, such as Crestliner and Manitou, to support the claim that the variance was necessary to maintain these contracts. Dunham asserted that under the definition of a "variance" in the zoning ordinance, a variance could only be granted based on conditions peculiar to the land—not conditions created by the actions of Hodne Homes (i.e., boat dealership contracts). Lastly, Dunham claimed Sodak Marina would use the building for retail sales, violating the LP-3 zoning regulations.

[¶9.] The Board unanimously voted to find that Hodne Homes would suffer peculiar and exceptional practical difficulties or exceptional and undue hardship if the variance were denied. The Board further unanimously voted that there was an extraordinary and exceptional situation on Lot 1 that made the variance necessary, and the variance's use would not be detrimental to the other uses in the LP-3 zoning area because it was in the general character of the other uses within that area. Dunham objected to the Board's decision to grant the variance because she contended the Board made no actual factual findings at the hearing.

[¶10.] On September 1, 2020, the Board issued written findings of fact. In Finding 13, the Board found that Lot 1 was the only property in Lake County where a commercial business is directly adjacent to LP-3 property. In Finding 14, the Board found that "to facilitate the sale of boats made by manufacturers such as Crestliner and Manitou, Applicant has to demonstrate that it has a sales office, a shop, and a sufficient display area to show the boats" and that the zoning restrictions within the LP-3 zoning "would not accommodate a showroom large enough for storage of these boats and the Applicant could not have made the building any smaller and still met such dealer requirements." The Board used these findings to enter further findings of the existence of an extraordinary or exceptional situation or condition on Lot 1 and that if the variance was not granted, it would create peculiar and exceptional practical difficulties or an exceptional and undue hardship for Hodne Homes. In Finding 15, the Board found that the building's purpose of storing and displaying boats was permitted under LP-3 zoning.

[¶11.]    To return the matter to the circuit court, Dunham filed a second petition for writ of certiorari with the circuit court on September 30, 2020. Instead of filing a return, the Board filed a motion to dismiss, asserting that Dunham lacked standing because she was not aggrieved by the variance as required by SDCL 11-2-61. This was the first time in the lengthy procedural history of this case that the Board raised any issue regarding Dunham's standing. The Board claimed that because this Court had affirmed the CUP, only the variance remained in dispute. The Board further claimed the variance did not affect Dunham because it did not alter the side yard setback requirement between her property and the proposed building.

[¶12.]    In her brief opposing the motion to dismiss, Dunham asserted that the Board waived standing because it never raised the issue in any previous proceedings in the case's litigation. She also contended that even if the argument was not waived, she has standing because she is a person aggrieved by the Board's decision to grant the variance. She noted that she is the neighbor to the north of the lot owned by Hodne Homes and claimed the proposed oversized building would directly interfere with her use and enjoyment of her property.

[¶13.]    In its reply brief, the Board asserted that the existence of standing is a necessary part of establishing subject matter jurisdiction and that standing cannot be waived. The Board argued that because the side yard setback between the proposed building and Dunham's yard complies with the zoning ordinance, Dunham's property is unaffected by the variance. The Board contended that this Court's affirmance of the CUP eliminated the alleged injuries outlined by Dunham

as a basis for her standing to petition for a writ of certiorari. Following a hearing on the motion to dismiss, the circuit court issued a memorandum decision dismissing Dunham's petition because of a lack of standing. Dunham now appeals.

## Analysis and Decision

[¶14.]	In its motion to dismiss Dunham's second petition for writ of certiorari to return the matter to the circuit court, the Board argued that Dunham was no longer an aggrieved party with standing to appeal the Board's subsequent decision on remand, which related solely to the variance. A person must be "aggrieved by any decision of the board of adjustment" to have standing to bring suit under SDCL chapter 11-2.* To be "aggrieved," Dunham must show that she "suffered 'a personal and pecuniary loss not suffered by taxpayers in general, falling upon [her] in [her] individual capacity, and not merely in [her] capacity as a taxpayer and member of the body politic of the county[.]'" *See Powers v. Turner Cnty. Bd. of Adjustment*, 2020 S.D. 60, ¶ 17, 951 N.W.2d 284, 291 (quoting *Cable v. Union Cnty. Bd. of Comm'rs*, 2009 S.D. 59, ¶ 26, 769 N.W.2d 817, 827).

---

*	Under the version of SDCL 11-2-61 (amended in 2020) in effect at the time Dunham filed her original petition:

> Any person or persons, jointly or severally, or any taxpayer, or any officer, department, board, or bureau of the county, *aggrieved by any decision* of the board of adjustment may present to a court of record a petition duly verified, setting forth that the decision is illegal, in whole or in part, specifying the grounds of the illegality. The petition shall be presented to the court within thirty days after the filing of the decision in the office of the board of adjustment.

(Emphasis added.)

[¶15.] In her original petition for writ of certiorari, Dunham alleged that the Board's decision to grant Hodne Homes' request for a variance and a CUP for Lot 1 would cause her to experience a lack of daylight and drainage issues. On these allegations, Dunham sufficiently pled the existence of an injury necessary to establish standing for certiorari review under SDCL 11-2-61.

[¶16.] Although standing was not raised as an issue in Dunham's first appeal, this Court necessarily determined that Dunham was an aggrieved party with standing to challenge both the variance and CUP. *See Elliott v. Bd. of Cnty. Comm'rs of Lake Cnty*, 2005 S.D. 92, ¶ 17, 703 N.W.2d 361, 368 (providing that the question of standing as it relates to invoking the court's jurisdiction must be raised *sua sponte* when jurisdiction does not affirmatively appear from the record). Although the CUP was approved in the first appeal, we remanded Dunham's challenge to the variance because the Board failed to consider the special conditions prong of the two-part test required by SDCL 11-2-53(2). We noted that "[t]he Board specifically conditioned the approval of the CUP 'upon compliance with all applicable provisions of the [Ordinance].'" *Dunham I*, 2020 S.D. 23, ¶ 30 n.9, 943 N.W.2d at 338 n.9. The CUP authorized Hodne Homes to exceed the height and square footage limitations set forth in the ordinance. However, to construct a building that size on that lot, Hodne Homes still needed the variance in the setback requirements to comply with "all applicable provisions" of the zoning ordinance. *Id.* The injuries Dunham alleged regarding access to light and drainage issues both related to the size of the building and implicated both the CUP and the variance.

[¶17.] When we remanded, we necessarily determined that Dunham would continue to have standing to seek relief from the circuit court if the Board once again granted the requested variance. We reverse the circuit court's dismissal and remand for the circuit court to address the merits of Dunham's petition.

[¶18.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, concur.

[¶19.] SALTER, Justice, concurs specially.

SALTER, Justice (concurring specially).

[¶20.] I agree with the Court's conclusion that we necessarily decided the question of standing in *Dunham I*, and I write specially to emphasize that we are not deciding it again here. After we reached the conclusion in *Dunham I* to remand the case to comply with the two-part *Hines* test, *see Hines v. Bd. of Adjustment*, 2004 S.D. 13, ¶ 12, 675 N.W.2d 231, 234, we continued our analysis of the variance question in anticipation of further substantive proceedings. Indeed, we specifically "address[ed] Dunham's other separate challenges to the variance *to provide the Board and parties with guidance on remand.*" *Dunham I*, 2020 S.D. 23, ¶ 21, 943 N.W.2d at 336 (emphasis added). Under the circumstances, the circuit court was not authorized to consider different issues outside the scope of the remand.