#26107, #26108, #26116-rev & rem-SLZ

**2012 S.D. 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *
#26107

DALE E. SPRINGER, DOROTHY M.
SPRINGER, ROGER A. SPRINGER
and DANIEL L. SPRINGER,                    Plaintiffs and Appellants,


        v.


ANDY CAHOY,                                Defendant and Appellee,


        and


DONALD L. MCCLUNG,
AS TRUSTEE OF THE DONALD L.
MCCLUNG TRUST, LEONARD M.
MCCLUNG, AS TRUSTEE OF THE
LEONARD M. MCCLUNG TRUST and
ALL OTHER PERSONS UNKNOWN
CLAIMING ANY RIGHT, TITLE, ESTATE,
LIEN OR INTEREST IN THE COMPLAINT
ADVERSE TO PLAINTIFFS'
OWNERSHIP OR ANY CLOUD ON
PLAINTIFF'S TITLE,                         Defendants.
-----------------------------------------------------------------------------------------------------------------
#26108, #26116 (N.O.R.)

DALE E. SPRINGER, DOROTHY M.
SPRINGER, ROGER A SPRINGER
and DANIEL L. SPRINGER,                    Plaintiffs and Appellees,


        v.


ANDY CAHOY,                                Defendant and Appellant,


        and


DONALD L. MCCLUNG, AS TRUSTEE
OF THE DONALD L. MCCLUNG TRUST,
LEONARD M. MCCLUNG, AS TRUSTEE
OF THE LEONARD M. MCCLUNG TRUST
and ALL OTHER PERSONS UNKNOWN

CLAIMING ANY RIGHT, TITLE, ESTATE,
LIEN OR INTEREST IN THE COMPLAINT
ADVERSE TO PLAINTIFFS' OWNERSHIP
OR ANY CLOUD ON PLAINTIFF'S TITLE,      Defendants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CLARK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RONALD K. ROEHR
Judge

\* \* \* \*

GARY W. SCHUMACHER of
Wilkinson & Wilkinson
De Smet, South Dakota

Attorneys for plaintiffs and
appellants #26107, for plaintiffs
and appellees #26108, #26116
(N.O.R.).


GORDON P. NIELSEN of
Delaney, Vander Linden,
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota

Attorneys for defendant and
appellant #26108, for defendant
and appellee #26107.

CONSIDERED ON BRIEFS
ON MARCH 19, 2012

OPINION FILED **05/02/12**

ZINTER, Justice

[¶1.]        The central issue in these consolidated appeals is whether an easement implied from prior use exists.  Dale Springer, Dorothy Springer, Roger Springer, and Daniel Springer (Springers) own a forty-acre parcel of property.  Andy Cahoy owns an adjoining forty-acre parcel.  After Springers purchased their parcel, they began using Cahoy's parcel to access their property.  When Cahoy prohibited Springers from crossing Cahoy's parcel, Springers filed suit claiming an implied easement on Cahoy's parcel.  The circuit court concluded that an easement implied from prior use exists with certain limitations.  Both parties appealed, and the appeals have been consolidated.  We reverse the circuit court's determination that an implied easement exists.

*Facts and Procedural History*

[¶2.]        From 1947 to 1967, Lester Harrington owned the two forty-acre parcels at issue.  Harrington farmed the east and west parcels as one tract.  On October 13, 1967, Harrington deeded the east forty-acre parcel to his son George Harrington and the west forty-acre parcel to his daughter Lylia McClung.  After a number of additional transfers of the then-separate parcels, the parties in this litigation ultimately acquired title.  Cahoy purchased the west parcel in November 2007.  Springers purchased the east parcel in May 2008.

[¶3.]        From 1967 until 2007, when Cahoy purchased his property, the two parcels were owned separately but were rented to one person and were operated as one unit.  After the Springer-Cahoy purchases, the east parcel became an isolated tract in the sense that it had no direct access to a public highway.  There is also no

written document, either recorded or unrecorded, granting an easement across the west parcel for the benefit of the east parcel.

[¶4.] In the spring of 2008, Cahoy put up no trespassing signs attempting to restrict Springers from crossing his parcel. Springers, however, continued to cross Cahoy's parcel to access their property. Consequently, in 2009, Cahoy locked the gates that provided access to his parcel. Springers subsequently filed this suit claiming an implied easement on Cahoy's parcel.

[¶5.] Following a court trial, the circuit court concluded that an easement implied from prior use exists.[1] The court limited the easement to use for ingress and egress in the spring and fall over a meandering route proposed by Springers. The court also limited the easement's use to agricultural purposes, including pasturing, haying, farming, and the care of trees. Tractors and other agricultural equipment were required to be of seventy horsepower or less with "flotation" tires so as to limit damage to Cahoy's parcel. Nonagricultural uses, such as hunting, fishing, trapping, or recreation, were not permitted.

[¶6.] Cahoy appeals the circuit court's order declaring the existence of the implied easement. Cahoy argues that: (1) the circuit court erred in determining that an easement exists; (2) South Dakota's Marketable Title Act bars a claim of interest (an implied easement) first asserted forty-two years after the claim allegedly arose; and (3), in the alternative, that Cahoy, the owner of the servient tenement, is entitled to locate the easement so long as the location is reasonably

---

1. Having determined that an easement implied from prior use exists, the circuit court did not address Springers' claim of entitlement to an easement implied by necessity. We express no opinion on that claim.

suited to the servitude.  Springers, by appeal and notice of review, argue that the circuit court erred in restricting the uses of the easement.  Because Cahoy's first argument disposes of the appeal, we only address the issue of the existence of an easement implied from prior use.

*Decision*

[¶7.]        "The common law recognizes two types of implied easements: easements by necessity and easements implied from prior use." *Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶ 11, 657 N.W.2d 300, 304.  To establish an easement implied from prior use, the party claiming the easement must establish the following four elements:

> (1) the relevant parcels of land had been in unitary ownership;
> (2) the use giving rise to the easement was in existence at the time of the conveyance dividing ownership of the property; (3) the use had been so long continued and so obvious as to show that it was meant to be permanent; and (4) at the time of the severance, the easement was necessary for the proper and reasonable enjoyment of the dominant tract.

*Id.* ¶ 14.  "A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence." *Griffeth v. Eid*, 573 N.W.2d 829, 832 (N.D. 1998); *accord Cobb v. Daugherty*, 225 W. Va. 435, 442, 693 S.E.2d 800, 807 (2010).

[¶8.]        Cahoy argues that to prevail on their claim, Springers were required to present clear and convincing evidence that at the time of the 1967 severance of title, a servitude on the west parcel to access the east parcel was so *obvious* that it indicated an easement was intended to be permanent.  We agree.  *See Thompson*, 2003 S.D. 12, ¶ 14, 657 N.W.2d at 305 (stating that the use "had been so long continued and so obvious as to show that it was meant to be permanent"); *Wiege v.*

*Knock*, 293 N.W.2d 146, 148 (S.D. 1980) (stating that to establish an easement implied from prior use, there must be "during unity of title, an apparently permanent and obvious servitude"); *Townsend v. Yankton Super 8 Motel, Inc.*, 371 N.W.2d 162, 165 (S.D. 1985) ("[W]here an owner conveys part of his land, he impliedly grants all those *apparent* or *visible easements* upon the part retained, which were *at the time used* by the grantor for the benefit of the part conveyed and which are reasonably necessary for the use of that part." (emphasis added) (citing 1 Thompson on Real Property § 392, at 636)). *See also Black's Law Dictionary* 1492 (9th ed. 2009) (defining an "apparent servitude" as "[a] servitude appurtenant that is manifested by exterior signs or constructions, such as a roadway").

[¶9.]    In this case, Springers produced no evidence that at the time of the 1967 severance of title, an obvious or visible trail, path, roadway, or servitude existed from the west parcel to access the east parcel on the meandering route proposed by Springers. The only witness who had any personal knowledge of the property around 1967 was Donald McClung. He testified that the west parcel was just a pasture with no obvious servitude crossing it.[2] Further, the only

---

2.    Donald McClung testified:

> Q. What's your first recollection of being out to that property, Mr. McClung?
> A. Probably, way back as a kid, you know. I mean, you know, through the years there's different times. You know, I remember riding on that property with my grandfather ([Lester Harrington]). So, it had to be a long time.
> Q. Do you ever recall seeing a permanent roadway leading across your property to the Springer property?
> A. No. There never was. Because that was a – like a pasture, basically.

photographic evidence around the time of severance was a 1971 aerial photograph. That photograph did not reveal any path, trail, or obvious servitude from the public road across the west parcel to the east parcel. Springers did present some evidence of a visible pathway, but that evidence related to conditions existing long after the severance of title. Thus, there was no clear and convincing evidence of the existence of an apparently permanent and obvious servitude in use in 1967.

[¶10.] We acknowledge that the circuit court *concluded* that the "[u]se of [Cahoy's] parcel to access the [Springers'] parcel has been so long[,] continuous and so obvious that it was meant to be permanent." We also agree one may infer that general, unspecified access to the east parcel occurred from the west parcel over the years. But a trial court's conclusions of law must be supported by its findings of fact, *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D. 1984), and the court did not *find* that there was a historical use of Springer's proposed trail that was so continuous, obvious, and visible to make it an apparently permanent easement at the time of severance.[3] Indeed, as we have previously pointed out, there is no evidence of any

---

3. The circuit court's findings simply reflect that because the parcels were historically one unit and the public road bounded the property on the western side, Lester Harrington accessed all of the property from the public road. The court found:

> Access to the parcel held by the Plaintiffs has historically been across the parcel held by Defendants. Lester Harrington gained access to the property from the public road adjacent to the west boundary of the property. There is no evidence that he accessed it in any other manner during his twenty years of unitary ownership. There were no other adjacent public roads. Lester Harrington did not own other adjacent property.

(continued . . .)

continuous, obvious, and visible path or trail suggesting an apparently permanent easement at the time of severance.

[¶11.]     We conclude that Springers failed to present clear and convincing evidence of an easement implied from prior use.  In light of this holding, we do not consider the other arguments of the parties.  Reversed and remanded for further proceedings not inconsistent with this opinion.

[¶12.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

(. . . continued)

These findings do not reflect that Springer's proposed servitude so obvious or visible that an apparently permanent easement was being used at the time of severance.