#29040-r-MES
**2020 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| | |
|---|---|
| MARK HEUMILLER AND KELLY HEUMILLER, | Plaintiffs and Appellants, |
| v. | |
| ROB HANSEN, MARY HANSEN, and JOHN HEUMILLER, | Defendants and Appellees, |
| and | |
| CLETUS HEUMILLER and SHIRLEY HEUMILLER, | Defendants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRIS GILES
Judge

* * * *

MICHAEL E. UNKE
Salem, South Dakota

Attorney for plaintiffs
and appellants.


MIKE C. FINK
Bridgewater, South Dakota

Attorney for defendants
and appellees.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 11, 2020
OPINION FILED **10/14/20**

#29040

SALTER, Justice

[¶1.]        Mark and Kelly Heumiller brought suit against Rob and Mary Hansen, John Heumiller, and Cletus and Shirley Heumiller requesting a preliminary injunction and alleging the existence of an easement allowing access to a gravel pit on their property.  After all parties moved for summary judgment, the circuit court determined Mark and Kelly did not have an easement, granted the Appellees' motion, and denied Mark and Kelly's motion.  Mark and Kelly appeal, arguing the circuit court erred when it refused to recognize an easement implied by prior use.  We reverse and remand for trial.

## Background

[¶2.]        Cletus and Shirley Heumiller farmed in rural McCook County for over 50 years.  Included in their farm property was the southern half of Section 34 of Brookfield Township, which is a 320-acre half-section of land with a gravel pit located on the northern portion, approximately in the middle.  The gravel pit was operational almost all of the years Cletus and Shirley farmed the land, and over time, Cletus worked with different companies that mined and hauled the gravel.  An access road running mostly north and south through the middle of the south half of the property allowed large trucks ingress and egress.

[¶3.]        Cletus and Shirley have six living children, including Mark Heumiller, Mary Hansen, and John Heumiller.  During their depositions, Cletus and Shirley testified that it was their intention to either gift or sell their farmland to their children in comparable shares.  In 2006, Cletus and Shirley entered into a contract for deed with Mark and his wife, Kelly, to sell the north half of the 320-acre tract

(160 acres). The terms of the contract contemplated a purchase price of $84,000 paid in roughly equal annual payments for ten years commencing in 2007 and ending in 2017. The contract also required Mark and Kelly to pay Cletus and Shirley one-half of the mineral income from the gravel pit during the contract period.

[¶4.] The contract for deed did not contain any provision regarding the access road to the gravel pit. The road was located on land that was still owned by Cletus and Shirley and rented to Mark and Tom Heumiller, another one of their sons who farmed with Mark. While Mark testified that there was no discussion about the access road, Shirley testified that she told Mark in 2006 to "be thinking about a road."

[¶5.] Mark and Kelly completed the terms of the contract for deed in January 2017, and Cletus and Shirley executed a warranty deed for the 160-acre parcel including the gravel pit. The warranty deed, like the contract for deed, did not mention an easement granting use of the access road to the gravel pit.

[¶6.] During 2017 and 2018, family disputes arose concerning the south half of the original half-section. Cletus and Shirley had previously gifted the east 40-acre parcel to John in 2000 and the west 40 acres to Mary and her husband, Rob, in 2006. Cletus and Shirley initially retained the interior 80-acre parcel that included the access road to the gravel pit, and, as indicated above, were renting the land to Mark and Tom.

[¶7.] Efforts to renegotiate the lease on this 80-acre parcel prior to its March 2018 expiration stalled because Mark and Tom wanted to continue renting the land

from Cletus and Shirley for the same price. However, Cletus testified during his deposition that he and Shirley wanted additional rent for Mark's use of the access road. Cletus suggested the additional rent was not necessary during the recently-completed 10-year contract period because he and Shirley were receiving a percentage of the mineral proceeds. After the warranty deed was conveyed, however, Cletus and Shirley thought the rent price on the 80-acre parcel should be adjusted for continued use of the access road. Mark disagreed and refused to pay any additional rent to use the access road.

[¶8.] In October 2017, Cletus and Shirley sold the southern interior 80 acres in two parcels. Mary and Rob purchased the west 40 acres, and John bought the east 40 acres. Both parcels contain a portion of the access road. After the two sales, Mary, Rob, and John attempted to renew the lease agreement with Mark and Tom, but negotiations were unsuccessful.

[¶9.] Once Mark and Tom's lease expired in March 2018, Mary, Rob, and John attempted to block their use of the access road. Mark and Kelly commenced the current action and sought a preliminary injunction, which the circuit court granted. They initially requested only an easement by prescription, but later amended their complaint to add additional claims of easement by necessity and easement implied by prior use. All of the parties moved for summary judgment.

[¶10.] During the subsequent hearing, the circuit court rejected Mark and Kelly's prescriptive easement and easement by necessity claims and granted partial summary judgment to Mary, Rob, and John (the Appellees) on these theories. The

court held the remaining summary judgment claim—easement implied by prior use—in abeyance.

[¶11.] After additional discovery and submissions by the parties, the circuit court issued a memorandum opinion granting the Appellees' motion for summary judgment on Mark and Kelly's easement implied by prior use claim. The court concluded that Cletus and Shirley had no intention "to create any permanent easement rights . . . ." In the court's view, "[i]t appear[ed] very clear . . . that Cletus and Shirley were not just going to give [Mark and Kelly] an easement . . . but they were willing to negotiate with [them] to allow continued access . . . ."

[¶12.] Mark and Kelly appeal, raising one issue for our review: Whether the circuit court erred when it granted the Appellees' summary judgment on Mark and Kelly's claim of an easement implied by prior use.[1]

### Analysis

[¶13.] A circuit court's decision to grant summary judgment is reviewed de novo under our well-settled legal principles:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

---

1. Mark and Kelly's arguments on appeal are solely directed at the easement by prior use claim, leading us to conclude that they have abandoned their prescriptive easement and easement by necessity claims.

*Zochert v. Protective Life Ins. Co.*, 2018 S.D. 84, ¶¶ 18-19, 921 N.W.2d 479, 486

(quoting *Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874).

[¶14.]     We have held that a common-law easement is implied by prior use in

the following circumstances:

> [W]hen an owner of an entire tract of land or of two or more
> adjoining tracts, uses one tract, or a part of it, so that one part
> derives from another a benefit or advantage of an apparent,
> continuous, and permanent nature, and the owner later conveys
> part of the property without mention being made of these uses.

*Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶ 12, 657 N.W.2d 300, 305.

[¶15.]     This principle reflects the accepted rule that, in the absence of an

explicit contrary agreement, "the conveyance imparts a grant with the benefits and

burdens existing at the time of the conveyance, even when such grant is not

reserved or specified in the deed." *Id.* (citation omitted).  Implication of an

easement "is based on what the parties *probably* intended or had reasonable

grounds to expect."  Restatement (Third) of Prop. (Servitudes) § 2.12 cmt. h (2000)

(emphasis added).  As a result, "[t]he implication does not arise if the facts or

circumstances of the conveyance indicate that the parties did *not* intend to create a

servitude to continue the prior use." *Id.* (emphasis added).

[¶16.]     To establish an easement implied by prior use, a plaintiff must prove

the following elements:

> (1)     the relevant parcels of land had been in unitary
> ownership;
>
> (2)     the use giving rise to the easement was in existence at the
> time of the conveyance dividing ownership of the
> property;

(3)     the use had been so long continued and so obvious as to show that it was meant to be permanent; and

(4)     at the time of the severance, the easement was necessary for the proper and reasonable enjoyment of the dominant tract.

*Springer v. Cahoy*, 2012 S.D. 32, ¶ 7, 814 N.W.2d 131, 133 (quoting *Thompson*, 2003 S.D. 12, ¶ 14, 657 N.W.2d at 305-06).

[¶17.]     Applying the four-part test set out in *Springer* and *Thompson*, the circuit court determined that the first and second elements were met because "[t]here is no dispute that the relevant parcels of land had been in unitary ownership and the use giving rise to the easement was in existence at the time of the conveyance dividing ownership of the property." We agree. Prior to 2017, Cletus and Shirley owned all of the property in question, and the access road to the gravel pit was in use when Cletus and Shirley executed the warranty deed conveying the north half of the property to Mark and Kelly.

[¶18.]     However, the circuit court varied its application of the third element from the correct formulation. Instead of considering whether "the use had been so long continued and so obvious as to show that it was meant to be permanent," the court attempted to resolve whether the access road was, in fact, permanent based upon the anticipated need for future repairs. The court concluded that while the road had a "very lengthy history," it is not permanent because a bridge on the road is "failing and in dire need of replacement." The actual permanency as affected by the need for prospective repairs is not the correct inquiry because it does not test the nature of the past use—it tests the extent and feasibility of the future use.

[¶19.]     Our previous statements of this third element relating to permanency provide the better rule by requiring an analysis of the use's history and relative obviousness to determine whether it appears the use was *meant* to be permanent. Further, our cases make clear that the inquiry ends at the point the common owner's unitary property interest is severed.

> [W]here, during unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude, *at the time of severance*, is in use and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right to continue such use arises by implication of law.

*Wiege v. Knock*, 293 N.W.2d 146, 148 (S.D. 1980) (emphasis added) (citing *Homes Dev. Co., Inc. v. Simmons*, 75 S.D. 575, 70 N.W.2d 527 (1955)); *see also Hoffman v. Bob Law, Inc.*, 2016 S.D. 94, ¶ 8 n.6, 888 N.W.2d 569, 572 n.6 (quoting *Thompson*, 2003 S.D. 12, ¶ 14, 657 N.W.2d at 305) (observing that the circuit court had denied a claim for an easement implied by prior use because "when unity of title was severed . . . the use . . . was not 'so long continued and so obvious as to show that it was meant to be permanent'"); *Springer*, 2012 S.D. 32, ¶ 9, 814 N.W.2d at 134 (reversing judgment implying an easement by prior use where there was no evidence of the disputed use at the time of severance—only years later).

[¶20.]     Therefore, if we use the date of the warranty deed as the date of the severance, the correct inquiry should be whether on January 13, 2017,[2] the use of

---

2.     Neither the parties nor the circuit court addressed the point at which Cletus and Shirley's unitary interest was severed. The two options are the date of the 2007 contract for deed with Mark and Kelly or the subsequent issuance of the warranty deed in January 2017. We have not previously considered

(continued . . .)

the road for access to the gravel pit had continued for so long and was so obvious "as to show that it was meant to be permanent." *See supra* ¶ 15. By concentrating on the need for future repairs instead of the nature of the access road's prior use, the circuit court erred.

[¶21.] We also believe the circuit court's consideration of the third element does not correspond to our well-settled standards for considering motions for summary judgment under SDCL 15-6-56. A large portion of the court's analysis centered upon determining whether Cletus and Shirley specifically intended to create a permanent easement for the access road. *See* Restatement (Third) of Prop. (Servitudes) § 2.12 cmt. h (2000) (stating an easement implied by prior use does not arise if the parties did not intend to create a servitude). The court ultimately found the absence of any such intent, but it did so amid a record that contained disputed issues of material fact.

[¶22.] The most critical of these facts relates to Shirley's claim during her deposition that she told Mark in 2006 that he needed to "be thinking about a road." Mark, however, flatly disagrees and stated in an affidavit that "[a]t no time in . . . 2006 did . . . Shirley Heumiller ever say to [me] that [I] had to look for another access road to the gravel pit." In his deposition testimony, Mark claims that the

---

(. . . continued)
whether a contract for deed could affect the severance of a unitary ownership interest, and our research indicates divergent authority on the issue. *See, e.g.*, *Lake George Park, LLC v. Mathwig*, 548 N.W.2d 312, 313-14 (Minn. Ct. App. 1996) (citing cases). In this case, however, we think it is not necessary to definitively answer the question because we do not perceive a different result depending upon the date.

topic was simply never discussed.[3] He believed at one point in 2017 his parents were prepared to grant him and Kelly an express easement, though they ultimately did not sign an easement agreement prepared by his attorney *after the conveyance*. By crediting Shirley's testimony over Mark's, the circuit court impermissibly weighed the evidence on a material issue—whether Cletus and Shirley did not intend to create an easement. *See Hamilton v. Sommers*, 2014 S.D. 76, ¶ 42, 855 N.W.2d 855, 868 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986)) ("The judge's function at the summary judgment stage . . . is not to weigh the evidence and determine the matters' truth.").

[¶23.] Also disputed is the circuit court's finding that Mark and Kelly were paying for the use of the road during the contract for deed period, and the court's conclusion that this use was transitory and did not accompany the subsequent conveyance of the land. This was the view Cletus expressed in his deposition and was based upon his belief that the one-half portion of the mineral income he and Shirley received under the contract for deed included Mark's use of the road, but only during the contract period. However, the text of the contract for deed does not support this determination. Cletus's testimony also stands in tension with Shirley's view that Mark's use of the access road was actually an incident of Mark and Tom's lease for the land containing the access road. Further complicating matters,

---

3.      The circuit court concluded that the absence of any reference to an easement in either the contract for deed or the warranty deed supported the inference that Cletus and Shirley did not intend to create an easement. However, the lack of an express easement is an immutable fact in all cases involving easements by implication, and standing alone, we think its significance in this summary judgment proceeding is limited.

however, is the fact that Mark disputes this assertion, claiming he and Tom only rented the tillable land within their parents' interior 80-acre parcel and not the access road. These factual conflicts are distinctly ill-suited to the court's resolution during a summary judgment proceeding, and the circuit court should not have determined them as a matter of law. *See Springer*, 2012 S.D. 32, ¶ 7, 814 N.W.2d at 134 (citation omitted) ("A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence.").

[¶24.] Finally, additional disputed issues of material fact exist concerning the fourth element of the test for an easement implied by prior use—whether at the time of the severance, the easement was necessary for the proper and reasonable enjoyment of the dominant tract.[4] The circuit court determined there was a lack of necessity by equating the cost to replace a bridge on the access road in need of

4.  We have distinguished between the levels of necessity required for the two types of implied easements recognized in the common law—easements by necessity, which are implied in circumstances where a conveyance without an express easement leaves a property owner "landlocked," and the class of easements at issue in this appeal, those implied by prior use:

    > In either instance, the party claiming the existence of an implied easement must show that it is necessary, though the requisite degree of necessity is not as high when an easement by prior use is sought. Compare the Restatement of Property (Third) § 2.15, Servitudes Created By Necessity, cmt d. (necessary rights include those essential to enjoyment of the property and those necessary to make effective use of the property) with the Restatement of Property (Third) § 2.12, Servitudes Implied From Prior Use (contin[uation] of prior use need only be "reasonably necessary"). *See Homes Development Co.*, 75 S.D. at 580, 70 N.W.2d at 530 (easement was "essential" to the beneficial enjoyment of the land).

    *Thompson*, 2003 S.D. 12, ¶ 13, 657 N.W.2d at 305.

repair with the cost associated with building a new road entirely on Mark and Kelly's property. In the court's view, the cost of constructing the new alternate road offset the costs of replacing the bridge on the existing road, making the existing access road unnecessary for the proper and reasonable enjoyment of Mark and Kelly's land.[5] However, the relative costs associated with the repairs and construction are not matters of undisputed fact. Indeed, the record contains little specific evidence of the cost to build the new road, and there is no evidence relating to the cost of repairing the current access road. Under the circumstances, the court lacked a sufficient basis to determine the necessity element as a matter of law given the paucity of information in the record.

## Conclusion

[¶25.]     Under the circumstances, we believe the circuit court erred when it granted the Appellees' motion for summary judgment. The circuit court's analysis reflects errors in the application of the substantive law and the standards required by SDCL 15-6-56. We reverse and remand for trial.

[¶26.]     GILBERTSON, Chief Justice, and KERN, JENSEN, and DEVANEY, Justices, concur.

---

5.     The parties have not challenged this method of assessing necessity, and for this reason, we express no opinion as to its propriety.