#29352-a-MES
**2022 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GARRY EHLEBRACHT, STEVEN
GREBER, MARY GREBER, RICHARD
RALL, AMY RALL, and LARETTA KRANZ,            Appellants,

v.

DEUEL COUNTY PLANNING
COMMISSION, sitting as DEUEL
COUNTY BOARD OF ADJUSTMENT, and
CROWNED RIDGE WIND II, LLC,            Appellees,

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
DEUEL COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAWN M. ELSHERE
Judge

* * * *

A.J. SWANSON
Canton, South Dakota                      Attorney for appellants.


ZACHARY W. PETERSON
JACK HIEB of
Richardson, Wyly, Wise, Sauck,
    & Hieb, LLP
Aberdeen, South Dakota                    Attorneys for appellee Deuel
                                          County Board of Adjustment.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **03/23/22**

* * * *

MILES F. SCHUMACHER
MICHAEL F. NADOLSKI
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz, & Lebrun, P.C.
Sioux Falls, South Dakota

Attorneys for appellee Crowned Ridge Wind II, LLC.

SALTER, Justice

[¶1.]     Crowned Ridge Wind II, LLC (Crowned Ridge) applied for a special exception permit (SEP) from the Deuel County Board of Adjustment (the Board) to construct and operate a Wind Energy System (WES) in Deuel County. Following a public hearing, the Board unanimously approved the permit. Several landowners in Deuel County sought certiorari review in circuit court. The court upheld the Board's action. The landowners appeal. We affirm.

## Facts and Procedural History

[¶2.]     The Deuel County Board of County Commissioners adopted the Deuel County Zoning Ordinance (the Ordinance) in 2004. The Ordinance created the Deuel County Board of Adjustment and authorized it to hear and decide requests for "special exceptions" from zoning standards, which the Ordinance defines as:

> a use that would not be appropriate generally or without restriction throughout the zoning division or district, but which, if controlled as to number, area, location, or relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare. Such uses may be permitted in a . . . zoning . . . district as special exceptions, as specific provisions for such exceptions are made in these zoning regulations. Special exceptions are subject to evaluation and approval by the Board of Adjustment and are administrative in nature.

[¶3.]     Included in the Ordinance is Section 1215, which contains the relevant provisions pertaining to WESs—a designation specifically recognized as an appropriate land use in agricultural districts when constructed under the terms of an SEP. The Ordinance requires that "[a]ll WESs shall meet or exceed standards and regulations of the Federal Aviation Administration and South Dakota State

Statutes and any other agency of federal or state government with the authority to regulate WESs."

[¶4.]     The Ordinance also requires certain mitigating measures and specified setbacks for the benefit of area residents and landowners who do not participate in a WES.  For example, wind turbines must be located a distance of "not less than four times the height of the wind turbine" from non-participating residences and businesses.  The Ordinance also requires a distance of one mile from the nearest residence located in the municipalities of Altamont, Astoria, Brandt, and Goodwin, and one and one-half miles from the city limits of Gary, Toronto, and Clear Lake (with certain exceptions).  Additional requirements are included within the Ordinance for lighting, turbine spacing, electric lines, decommissioning, site restoration, height, and the appearance of the towers.  The Ordinance further provides that the noise level produced by the wind turbines "shall not exceed 45 dBA[1] . . . at the perimeter of existing residences, for non-participating residences" and limits the "allowable shadow flicker[2] at existing residences to no more than 30 hours annually."

[¶5.]     On August 14, 2018, Crowned Ridge sought an SEP from the Board for the construction and operation of a WES with up to 68 wind turbines to be built on

---

1.     The term dBA stands for "A-weighted decibels."  It "is a unit for measuring sound levels, approximately equal to the smallest difference in loudness detectable by the human ear." *Atkinson v. City of Pierre*, 2005 S.D. 114, ¶ 42 n.13, 706 N.W.2d 791, 802 n.13 (Sabers, J., dissenting).

2.     Shadow flicker is the effect of the sun shining through the rotating blades of a wind turbine, creating a moving shadow.

land zoned for agricultural use. Crowned Ridge included with its application form a participating property owner list, corresponding map, and a project overview, along with "maps, plans, studies, reports, and analyses," all required by the Ordinance. The application also included a sound and shadow flicker study. The Board held a public hearing on the SEP on September 20, 2018. Notice of the hearing was published in the local newspaper and provided to the affected townships of Goodwin, Rome, and Havana.

[¶6.] Garry Ehlebracht, Steven Greber, Mary Greber, Richard Rall, Amy Rall, and Laretta Kranz (the Appellants) were each present at the September 20 hearing, and most of them spoke to voice objections to the proposed WES. One Appellant expressed concerns about the noise limit and presented the Board with his acoustic consultant's concerns about the accuracy of Crowned Ridge's sound study. Another expressed unease with wind towers that might be located in areas that include wetlands, culverts and drain tile works, questioning who would fix drain tiling in the event it was damaged. Still another Appellant discussed "Wind Turbine Syndrome" and how the noise from the wind turbines would disturb his two Arabian horses. Other areas of concern included shadow flicker, less desirable views, and the potential for diminished property value and stymied community growth.

[¶7.] During the hearing, Board members asked Crowned Ridge representatives several questions relating to the Appellants' concerns. Board members also engaged Crowned Ridge representatives on a variety of other topics

relating to its SEP application, including promptness of handling complaints, liability for ice falling or being thrown from turbine blades, setbacks, studies on the effects of wind turbines on animal and human health, a bond requirement, aircraft detection lighting systems, compensation and tax revenue to the county, and the status of the permitting processes in other counties. The Board decided to postpone its decision on Crowned Ridge's SEP application until October 22, 2018.

[¶8.] The Appellants were again all present at the October 22 hearing when Board members continued their inquiry, questioning Crowned Ridge representatives on additional topics relating to the SEP application, such as the impact of the WES on livestock and fences, liability concerns, service roads, culverts, drain tile, buried electrical cable, and bridges. Also discussed were potential future additions to the WES, protocols for damaged wind turbines and damage to surrounding land, the locations of the wind turbine towers and possible changes, a decommissioning bond, and whether noise from the turbines would meet or exceed the decibel limit fixed by the Ordinance. At the conclusion of the hearing, the Board voted unanimously to approve the SEP application. The Board's chairperson subsequently signed findings of fact.

[¶9.] The Appellants sought certiorari review of the Board's approval. *See* SDCL 11-2-61 (stating that "[a]ny person . . . aggrieved by any decision of the board of adjustment may present to a court of record . . . a petition for writ of certiorari . . . within thirty days after the filing of the decision in the office of the board of adjustment"). In a 34-page petition filed with the circuit court, the Appellants

focused primarily on concerns about the amount of shadow flicker that would be observed on the property of non-participating landowners and noise incident to the operation of the turbines.

[¶10.]     Working within the narrow scope of certiorari review, the circuit court upheld the Board's decision to grant the SEP, concluding that the Board acted within its jurisdiction and regularly pursued its authority. The court also noted in its memorandum opinion that it could not "consider many of [the] issue[s] raised in [the Appellants'] briefs" because most of their arguments implicated only their "disagreement with South Dakota's allowance of WESs, and the county's ordinance pertaining to WESs." The court observed that the Appellants' grievances in that regard were "with the state and county legislative bodies."

[¶11.]     The Appellants now appeal the circuit court's decision, raising many of the same arguments addressed in their petition to the circuit court. Generally, the Appellants argue that the Board acted illegally and without jurisdiction. They do not, however, raise a facial attack on the validity of the Ordinance or its adoption; nor do they allege any procedural irregularities in the Board's consideration or approval of the SEP. We restate the specific issues they have raised as follows:

>     1.     Whether the Board's decision complies with SDCL 11-2-17.3.
>
>     2.     Whether the Board's decision results in a "de facto easement."
>
>     3.     Whether the Board's decision forecloses a future nuisance remedy.

4.      Whether the Board's decision violated substantive due process.

### Standard of Review

[¶12.]      "The scope of judicial review in writ of certiorari proceedings is statutorily determined by SDCL 21-31-8."[3] *Dunham v. Lake Cnty. Comm'n*, 2020 S.D. 23, ¶ 10, 943 N.W.2d 330, 333. We recently held in *Dunham* that the statute "limit[s] certiorari review 'to whether the board of adjustment had jurisdiction over the matter and whether it pursued in a regular manner the authority conferred upon it.'" *Id.* (quoting *Wedel v. Beadle Cnty. Comm'n*, 2016 S.D. 59, ¶ 11, 884 N.W.2d 755, 758). "The test of jurisdiction is whether there was power to enter upon the inquiry[.]" *Lake Hendricks Imp. Ass'n v. Brookings Cnty. Planning and Zoning Comm'n.*, 2016 S.D. 48, ¶ 26, 882 N.W.2d 307, 315 (citation omitted).

[¶13.]      "With a writ of certiorari, we do not review whether the [board's] decision is right or wrong." *Grant Cnty. Concerned Citizens v. Grant Cnty. Bd. of Adjustment*, 2015 S.D. 54, ¶ 10, 866 N.W.2d 149, 154 (citation omitted). "Courts must not review the merits of a petition or evidence for the purpose of determining the correctness of a finding, in the absence of a showing that the Board 'acted fraudulently or in arbitrary or willful disregard of undisputed and indisputable proof.'" *Lamar Outdoor Advert. of South Dakota, Inc. v. City of Rapid City*, 2007

---

3.      The text of SDCL 21-31-8 provides:

> The review upon writ of certiorari cannot be extended further than to determine whether the inferior court, tribunal, board, or officer, has regularly pursued the authority of such court, tribunal, board, or officer.

S.D. 35, ¶ 21, 731 N.W.2d 199, 205 (quoting *Cole v. Bd. of Adjustment of City of Huron*, 1999 S.D. 54, ¶ 10, 592 N.W.2d 175, 177); *see also Dunham*, 2020 S.D. 23, ¶ 11, 943 N.W.2d at 334 (stating "[c]ertiorari cannot be used to examine evidence for the purpose of determining the correctness of a finding"). Rather "[w]e will sustain the lower tribunal's decision 'unless it did some act forbidden by law or neglected to do some act required by law.'" *Dunham*, 2020 S.D. 23, ¶ 10, 943 N.W.2d at 333 (citation omitted).

## Analysis and Decision

### The Board's Jurisdiction

[¶14.] The Legislature has conferred upon counties the authority to enact comprehensive zoning ordinances regulating the manner in which land is utilized. *See* SDCL 11-2-13.[4] Within these zoning ordinances, counties may authorize conditional uses of real property.[5] The Legislature has defined a conditional use as "any use that, owing to certain special characteristics attendant to its operation,

---

4.  The text of SDCL 11-2-13 provides:

    > For the purpose of promoting health, safety, or the general welfare of the county the board may adopt a zoning ordinance to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of the yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, flood plain, or other purposes.

5.  Deuel County uses the term "special exception," but we can see no fundamental difference between a special exception and a conditional use, and the parties have not suggested otherwise.

may be permitted in a zoning district subject to the evaluation and approval by the zoning authority . . . ." SDCL 11-2-17.4. "A conditional use is subject to requirements that are different from the requirements imposed for any use permitted by right in the zoning district." *Id.*

[¶15.] When authorizing conditional uses of property, a county zoning ordinance must "specify the approving authority, each category of conditional use requiring such approval, the zoning districts in which a conditional use is available, the criteria for evaluating each conditional use, and any procedures for clarifying approval of certain conditional uses." SDCL 11-2-17.3. Interpreting these statutes is a question of law. *In re Conditional Use Permit No. 13-08*, 2014 S.D. 75, ¶ 8, 855 N.W.2d 836, 839.

[¶16.] Here, we conclude the Board had the "power to enter upon the inquiry" of Crowned Ridge's request for a special exception permit. *Lake Hendricks*, 2016 S.D. 48, ¶ 26, 882 N.W.2d at 315. Deuel County enacted the Ordinance in 2004 pursuant to SDCL 11-2-17.3, and the Ordinance complies with the requirements of the statute. Deuel County has recognized a WES as a land use that is appropriate in agriculturally zoned districts under certain conditions and has established criteria to be used when considering the merits of a WES application. Further, the Ordinance specifically empowers the Board to evaluate SEPs as the approving authority. Under the circumstances, therefore, the Board had the necessary jurisdiction because it possessed the statutory authority to do precisely what it did—hear and determine Crowned Ridge's application for an SEP.

### *The Board's Exercise of Authority*

[¶17.]     A Board's decision will be sustained "unless it did some act forbidden by law or neglected to do some act required by law." *Dunham*, 2020 S.D. 23, ¶ 10, 943 N.W.2d at 333 (citation omitted).  Here, the Board undertook a logical inquiry to address the questions implicated by Crowned Ridge's application for an SEP.  It considered the criteria for special exceptions set out in the Ordinance and determined the merits of the application according to those standards.  The Board's deliberative process included the entry of written findings of fact and followed the presentation of evidence, data, oral statements, and relevant studies, much of which specifically addressed the issues of whether the WES could meet the limitations for noise and shadow flicker.  The Board held two public hearings, which, from our review of the record, seemed substantive and meaningful for all parties, and the Board's ultimate conclusion to grant the SEP was expressed in a unanimous vote of its members.

[¶18.]     These observations notwithstanding, the Appellants allege various constitutional and state law violations that, they argue, render the Board's decision to grant the SEP unlawful and susceptible to challenge even under the narrow strictures of our review.  Crowned Ridge and the Board respond by claiming that the majority of the arguments raised by the Appellants are simply not cognizable under certiorari review.  The circuit court concluded much the same, stating that many of the Appellants' arguments were more properly categorized as policy

disagreements with the contents of the Ordinance itself and "not addressable through a writ of certiorari."

[¶19.] Nevertheless, where an appeal of the denial of a petition for a writ of certiorari properly alleges an underlying illegality affecting the authority or jurisdiction of the board, those claims are appropriately before us for review. *See Lake Hendricks*, 2016 S.D. 48, ¶ 29, 882 N.W.2d at 316 ("Whether the Board had jurisdiction to grant . . . a CUP depends on whether the County validly adopted an ordinance pursuant to chapter 11-2 . . . .") (emphasis omitted); s*ee also Holborn v. Deuel Cnty. Bd. of Adjustment*, 2021 S.D. 6, ¶ 18, 955 N.W.2d 363, 372 (considering the merits of petitioner's due process claims on petition for writ of certiorari); *Armstrong v. Turner Cnty. Bd. of Adjustment*, 2009 S.D. 81 ¶ 32, 772 N.W.2d 643, 654 (same). We will, therefore, examine the Appellants' alleged constitutional and state law violations, where they are sufficiently developed, because they relate to the Board's authority to grant the SEP to Crowned Ridge.

### *Requirements of SDCL 11-2-17.3 and the Comprehensive Plan*

[¶20.] First, the Appellants claim that the Board did not regularly pursue its authority because the SEP does not comply with SDCL 11-2-17.3, which states the requirements for authorizing "a conditional use of real property . . . ." Under this theory, the Appellants allege that because the wind turbines will produce noise and shadow flicker affecting their homes, their properties are not simply *impacted* by the WES but, rather, they are *part* of it. In their view, then, the Board lacked authority to grant the SEP without their consent. Specifically, they allege that Crowned Ridge "overtly intended that Appellants' homes become part of that 'real

property' (within the context of SDCL 11-2-17.3), and the Board overtly obliged . . . ." (Emphasis omitted).

[¶21.]	Assuming, without deciding, that this allegation does, in fact, implicate the Board's authority, it is unsustainable. Pursuant to the WES requirements in the Ordinance, Crowned Ridge submitted a list of the participating property owners, including a map of the property where the wind turbines would be built. As non-participating landowners, the Appellants' property was not included in the application. In other words, Crowned Ridge did not seek to obtain a conditional use permit for property on which they did not intend to build wind turbines. The argument that an applicant must also seek a conditional use permit for *neighboring property* any time activities related to the conditional use might affect that neighboring property is unsupported by the statutory scheme governing conditional use permits.

[¶22.]	It is true that the various zoning regulations adopted by Deuel County, the details of its comprehensive plan, and the decisions of its Board of Adjustment have an impact on all the property owners in the county. *See Schafer v. Deuel Cnty. Bd. of Com'rs.*, 2006 S.D. 106, ¶ 12, 725 N.W.2d 241, 245 ("The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas, and thus bring about the physical development of the community." (quoting CJS *Zoning and Land Planning* § 3 (2005))). This much is reflected in the WES requirements, which provide, among other things, limits and regulations on setbacks, noise, and shadow flicker for non-participating landowners.

[¶23.]   However, it is equally true that nothing in SDCL 11-2-17.3 or the Ordinance requires applicants to seek a conditional use permit for every tract of land that may be affected by activities incident to the conditional use. The SEP application process does contemplate opposition to applications and concerns of adverse consequences to neighboring areas. In an effort to address these concerns, the Board provides notice of the permit application and holds public meetings at which members of the community may voice their support or opposition. These procedures are designed to gather input from individuals who may have an interest in the issuance of the permit, but whose ultimate approval is, strictly speaking, not required. *See Hines v. Bd. of Adjustment of City of Miller*, 2004 S.D. 13, ¶ 15, 675 N.W.2d 231, 235 ("The ultimate determination of the public's best interest is for the legislative body, not a minority of neighboring property owners." (citation omitted)). The Appellants' argument that Crowned Ridge was required to seek an SEP for their property is therefore unavailing.

[¶24.]   The Appellants similarly argue that the Board did not regularly pursue its authority because the SEP does not comply with a different portion of SDCL 11-2-17.3, which states in part, "The approving authority shall consider . . . the objectives of the comprehensive plan . . . ." The Appellants claim that the plan's objectives do not include the SEP sought by Crowned Ridge because Deuel County's

Comprehensive Land Use Plan[6] makes no mention of the special exception process or wind energy systems.

[¶25.]     Again, we are not persuaded.  In *Schafer v. Deuel County Board of Commissioners*, we stated that comprehensive plans are "for the purpose of protecting and guiding the physical, social, economic, and environmental development of the county . . . ."  2006 S.D. 106, ¶ 14, 725 N.W.2d 241, 247 (quoting SDCL 11-2-12).  Counties can then adopt zoning ordinances to "implement [the] long term comprehensive plan for future development."  *Id.*  The Supreme Court of Maine has provided a helpful explanation of the relationship between a comprehensive plan and a land use ordinance:

> The comprehensive plan and the land use ordinance are complementary, but their purposes are different.  The plan sets out what is to be accomplished; the ordinance sets out concrete standards to ensure that the plan's objectives are realized . . . .  The ordinance is the translation of the comprehensive plan's goals into measurable requirements for applicants[.]

*Nestle Waters N. Am., Inc. v. Town of Fryeburg*, 967 A.2d 702, 709–10 (Me. 2009).

[¶26.]     Here, the Ordinance provides specific guidelines and standards that align with the goals of the comprehensive plan.  The Ordinance requires that all SEPs "promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or general welfare."  This language in the

---

6.     The Deuel County Comprehensive Land Use Plan includes a set of policy guidelines, which are designed to "provide guidance for decisions affecting the use and development of land within the unincorporated areas of Deuel County."  *See also* SDCL 11-2-12 (listing the purposes of a comprehensive plan).

Ordinance is consistent with the county's comprehensive plan despite not being specifically referenced. We are unable to discern anything unlawful or irregular about the Board's pursuit of its authority as it relates to the comprehensive plan.

***"De Facto Easements"***

[¶27.]     The Appellants next allege that the Board's action was unlawful because granting the SEP amounted to a "de facto easement," burdening the Appellants' property in favor of Crowned Ridge. They source their argument to SDCL 43-13-2, which classifies certain interests in property as "easements." The statute provides, in relevant part:

> The following land burdens or servitudes upon land may be attached to other land as incidents or appurtenances, and are called easements:
>
> ****
>
> (8) The right of receiving air, light, or heat from or over, or discharging the same upon or over land;

[¶28.]     As a corresponding requirement, SDCL 43-13-4 provides that "[a] servitude can be created only by one who has a vested estate in the servient tenement."[7] The Appellants' argument thus posits the following: (1) while the wind turbines are operating (and the sun is in an optimal position) they "discharge" light "in an objectionable form" onto the Appellants' property in the form of shadow

---

7.     This statute may lack some precision. While it may be true that only a person with a vested estate in a servient tenement can expressly *grant* an easement, as we state below, South Dakota recognizes several classes of common law easements that are created by the actions of someone other than the holder of the servient tenement. *See infra* at ¶ 30.

flicker; (2) the right to discharge light is a class of easement that may be created only by one with a vested interest in the servient tenement; and (3) by approving the SEP, the Board has effectively granted a "de facto easement" for the right to discharge light over the Appellants' property in favor of Crowned Ridge, without the Appellants' permission. Several relevant observations bear upon the strength of the Appellants' argument in this regard.

[¶29.] First, the claim is factually unsupported because the Project will not "discharge" light as contemplated by SDCL 43-13-2(8).[8] We have not previously interpreted subsection eight of the statute, but its plain language does not support the Appellants' argument that the "adulterated light" resulting from the operation of wind turbines constitutes a discharge of light. Wind turbines no more *discharge* light by casting a shadow than does a grain silo or a multi-story office building. The Appellants concede that the source of light is, of course, the sun. For this reason alone, the Appellants' argument on this point is unpersuasive.

[¶30.] Second, we have never recognized the idea of a "de facto easement." Generally, easements are expressly created by specific written agreements or by operation of law. *See Kokesh v. Running*, 2002 S.D. 126, ¶ 12, 652 N.W.2d 790, 793 (citation omitted) ("Easements may be created by written grants, pursuant to a plat or by force of law."). Indeed, we have recognized the common-law concepts of

---

8. "[Q]uestions of statutory interpretation and application . . . 'are questions of law' and reviewed 'under the de novo standard with no deference afforded to the circuit court's decision.'" *Schafer*, 2006 S.D. 106, ¶ 5, 725 N.W.2d at 244 (quoting *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 12, 709 N.W.2d 824, 830).

implied easements and prescriptive easements. *See Springer v. Cahoy*, 2012 S.D. 32, ¶ 7, 814 N.W.2d 131, 133 (discussing implied easements); *Thompson v. E.I.G. Palace Mall, LLC*, 2003 S.D. 12, ¶ 7, 657 N.W.2d 300, 304 (discussing prescriptive easements). But these doctrines bear little resemblance to the Appellants' claim here, and, in fact, they do not allege that the Board's actions implicate a recognized common-law easement theory.

[¶31.] The California Court of Appeal has considered and rejected a similar "de facto easement" argument in connection with a claim alleging that a municipal ordinance violated state easement law. *See Kucera v. Lizza*, 69 Cal. Rptr. 2d 582, 591 (Cal. Ct. App. 1997). In *Kucera*, the court considered a claim by the owners of an apartment complex that a city ordinance requiring them to remove trees that obstructed a neighboring property owner's view constituted a "de facto easement" burdening their property in favor of the city, and, by extension, their neighbors. Examining a section of California's civil code that is identical to SDCL 43-13-2(8), the court rejected the argument, stating:

> Local governments regulate many aspects of property which affect views and the receipt of light . . . . No case has ever declared those [regulations] in conflict with state "easement" law, and not surprisingly. The same Legislature which has specified the way to create formal easements . . . has also authorized local governments to adopt by ordinance a broad range of regulation affecting views and sunlight . . . without requiring compliance with the formal easement law.

69 Cal. Rptr. 2d at 591.[9]  We find this reasoning persuasive.

[¶32.]     Even more compelling is the fact that the source of the Board's authority here is not derived from state easement law, but rather originates from the police power, which allows local governments to enact zoning ordinances in furtherance of "'the public health, safety, morals and general welfare; peace and order; and public comfort and convenience.'"  *Schafer*, 2006 S.D. 106, ¶¶ 11–12, 725 N.W.2d at 245 (quoting McQuillin, The Law of Municipal Corporations, Zoning § 25.17 (3rd ed. 2005)).  "Zoning, by its nature, restricts and regulates use of land w*hich would otherwise be lawful and proper*."  *Id.* ¶ 11, 725 N.W.2d at 245 (emphasis added).  In other words, the Board exercised its authority to *restrict* Crowned Ridge from indiscriminately constructing wind turbines where they might have otherwise wished to do so, and the Board's efforts in this regard do not implicate easement law.

[¶33.]     Despite this, the Appellants claim that because Crowned Ridge entered into "Effects Easements"[10] with neighboring landowners, the Board has allowed Crowned Ridge, through the approval of the SEP, to encumber their property with burdens identical to those imposed on landowners participating in the WES, but

9.   This conclusion was drawn in response to the property owners' argument that California state easement law preempted the municipal ordinance at issue.

10.   The term "Effects Easement" refers to a single section included in a larger document entitled "Wind Farm Lease and Easement Agreement," which Crowned Ridge uses to memorialize its contractual relationships with participating landowners.  The section grants an easement to Crowned Ridge for various effects generated by the operation of wind towers, including noise and shadow flicker.

without purchasing an easement. A central theme of the Appellants' arguments on this point is that Crowned Ridge should not be allowed to treat participating and non-participating landowners differently. However, any disparity the Appellants perceive overlooks the fact that participating and non-participating landowners are not similarly situated.

[¶34.] Crowned Ridge's lease agreement with participating landowners is 20 pages and, in addition to the Effects Easement, includes a multitude of other easements and rights incident to the contractual relationship. These include the right to actually construct and operate a wind turbine on a participating landowner's property or locate a turbine within what would otherwise be the prohibited setback area required by the Ordinance. The agreement also allows Crowned Ridge to exceed the regulatory limit for noise and shadow flicker on the property of participating landowners, a contingency specifically proscribed by the Ordinance.

[¶35.] Non-participating landowners, of course, are not obligated in the same direct and conspicuous way. They are not bound by any recognized type of easement. They can rely upon and enforce the restrictions governing the location of a WES's facilities and the regulatory limits of sound and shadow flicker, notwithstanding the fact they may believe the restrictions are not sufficiently rigorous.

[¶36.] In the end, the mere fact that Crowned Ridge entered into use agreements with participating landowners does not mean that Crowned Ridge was

required to reach similar agreements with non-participating landowners. Nor does it suggest that the Board somehow compelled an easement from them without their consent. Therefore, the Board did not exceed its authority on this basis.

*Foreclosure of a Future Nuisance Remedy*

[¶37.] Appellants further contend that the Board's issuance of the SEP will deprive them of the ability to assert a nuisance claim against Crowned Ridge in the future. This argument is premised on the text of SDCL 21-10-2, which provides, "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance." Appellants argue that so long as the operation of the wind farm satisfies the Ordinance and SEP requirements, they will be precluded from seeking nuisance relief in the event the noise and shadow flicker result in health and safety risks because those effects have been sanctioned by the Ordinance and the SEP.

[¶38.] The circuit court was not persuaded by this claim and distinguished the private operation of Crowned Ridge's wind farm from the types of public entities generally considered exempt from nuisance suits under SDCL 21-10-2. *See, e.g.*, *Kuper v. Lincoln-Union Elec. Co.*, 1996 S.D. 145, ¶¶ 47, 51, 557 N.W.2d 748, 761–62 (holding that "[r]ural electric cooperatives[, which] are specifically authorized by law" are exempt from nuisance claims under SDCL 21-10-2).

[¶39.] The circuit court's conclusion aside, we decline to address the merits of this argument because the Appellants do not specify how the potential application

of SDCL 21-10-2 affected the Board's authority or jurisdiction, and, therefore, it is not a proper or justiciable claim for certiorari review.

***Substantive Due Process***

[¶40.]     Finally, the Appellants argue that the Board's issuance of the SEP creates a substantive due process violation.  However, as indicated above, the Appellants do not facially challenge the constitutionality of the Ordinance.  Rather, the Appellants contend that, as applied, the Ordinance violates their rights to substantive due process, claiming in their brief, "The [substantive due process] violation asserted by Appellants is not the issuance of a [p]ermit for a wind farm . . . .  It is the issuance of one for this [p]roject."  (Emphasis omitted).

[¶41.]     "It is well settled that the doctrine of substantive due process, *does not* protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law.  Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests."  *Tri Cnty. Landfill Ass'n, Inc. v. Brule Cnty.*, 2000 S.D. 148, ¶ 14, 619 N.W.2d 663, 668 (quoting *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 31–32 (1st Cir. 1991)) (internal quotation marks omitted).

[¶42.]     In substantive due process claims, "the plaintiff must allege something more than that the government decision was arbitrary, capricious, or in violation of state law."  *Id.* ¶ 17 (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d

1102 (8th Cir. 1992)). The "claims should be limited to 'truly irrational' governmental actions . . . . An example would be attempting to apply a zoning ordinance only to persons whose names begin with a letter in the first half of the alphabet." *Id.*

[¶43.] Here, Deuel County's Ordinance balances the interests of both the SEP applicants and non-participating property owners. The Ordinance limits the collateral effects of a WES on non-participating land by regulating the size, location, number, noise, and shadow flicker of the turbines. While the Appellants may be unsatisfied with these standards, the restrictions surely fall well short of the "truly irrational" standard for substantive due process violations.

[¶44.] The Appellants offer what they describe as an additional due process argument premised on the assumption that the Board's issuance of the SEP results in an uncompensated taking of their property. Although the Appellants have not presented a fully-developed takings argument, they cite several United States Supreme Court decisions to suggest that zoning regulations that deprive individuals of the use and enjoyment of their property may violate due process.

[¶45.] While it is true that the Supreme Court, has, by its own admission, "commingl[ed]" the doctrines of due process and takings, these substantive areas involve discrete interests and inquiries. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 541, 125 S. Ct. 2074, 2083, 161 L. Ed. 2d 876 (2005). Determining whether the ordinance in question runs afoul of due process must occur "prior to and [is] distinct from the question whether a regulation effects a taking, for the Takings Clause

presupposes that the government has acted in pursuit of a valid public purpose."

544 U.S. at 543, 125 S. Ct. at 2084. As the Supreme Court has explained:

> The [Takings] Clause expressly requires compensation where government takes private property for public use. It does not bar government from interfering with property rights, but rather requires compensation in the event of otherwise proper interference amounting to a taking. Conversely, if a government action is found to be impermissible—for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action.

*Id.* (cleaned up).

[¶46.] Here, however, the Appellants have not made a distinct and separate takings claim, and their substantive due process claim would provide relief only if it was meritorious, which, we have determined, it is not.

## Conclusion

[¶47.] The Ordinance complied with the statutory requirements of SDCL 11-2-17.3 and, therefore, the Board had jurisdiction to consider Crowned Ridge's application for an SEP. Furthermore, the Board acted within the requirements of the Ordinance and SDCL chapter 11-2. The Board did not illegally grant an easement over the Appellants' property, nor did the Ordinance violate due process as applied to the Appellants.

[¶48.] We affirm.

[¶49.] JENSEN, Chief Justice, and KERN and DEVANEY, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶50.]     MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.